Argued September 29, affirmed October 19, 1915.

## MACKAY *v.* COMMISSION OF THE PORT OF TOLEDO.

(152 Pac. 250.)

**Master and Servant—Employers' Liability Act—Scope—Injuries.**

1. Employers' Liability Act (Laws 1911, p. 16), Section 1, requiring all persons having charge of or responsible for any work involving danger to the employee to use every device and precaution practicable for the safety of life and limb, the final clause of which declares that generally all owners or contractors having charge of

such work shall use such devices, etc., is not restricted to the particular persons mentioned in the first part of the section, but extends the scope of the statute to all persons having charge of or responsible for any work involving risk or danger to employees.

[As to what is "accident arising out of and in course of employment" under Employers' Liability Act, see note in **Ann. Cas.** 1914D, 1284.]

**Master and Servant—Question for Jury—Dangerous Work.**

2.    Under such act the question whether the work involved a danger is one of fact to be determined by the jury, rather than a question of law.

**Municipal Corporations—Action—Governmental or Ministerial Duty—Improvement of River—"Other Public Corporations."**

3.    Under Section 358, L. O. L., providing that an action may be maintained against any county and against any of the other public corporations mentioned in Section 357, in its corporate character and within the scope of its authority, or for an injury arising from some act or omission of such other public corporation, a municipal corporation designated a port, organized under Sections 6114–6125, L. O. L., is within the class of "the other public corporations," and in the execution of the actual work of improving a public highway, a river, was liable for injury to an employee from the breaking of an old, worn ladder furnished as part of the equipment of a dredger.

**Master and Servant—Employers' Liability Act—Employers Liable—Municipal Corporation.**

4.    A municipal corporation designated a port, incorporated under Sections 6114–6125, L. O. L., and liable at common law for injury to employees while engaged in actual ministerial work, was subject to the provisions of the Employers' Liability Act.

**Trial—Requested Instructions—Given Instructions.**

5.    Requested instructions, which, so far as applicable, were fully covered by the instructions given, were properly refused.

**Appeal and Error—Harmless Error—Admission of Evidence.**

6.    In an action by an employee against a municipal corporation designated a port, to recover for personal injury from the breaking of a defective ladder, error, if any, in admitting evidence that after plaintiff went to work on the dredger one of the port commissioners told him that one R. was his boss and to do whatever he told him to do, was harmless, since the action fell within the scope of the Employers' Liability Act, and the port would be bound by the acts or directions of the foreman of the work.

**Trial—Instructions—Assuming Facts.**

7.    In such action an instruction that, if plaintiff was entitled to a verdict, the jury should assess damages sustained by reason of the injury, with the right to consider the pain and suffering already undergone and the future suffering, the loss of earning capacity, and should determine the sum which would compensate him for his injury, was not objectionable as assuming any fact.

From Lincoln: LAWRENCE T. HARRIS, Judge.

Department 2.    Statement by MR. JUSTICE BENSON.

This is an action by William Mackay against the Commission of the Port of Toledo, a corporation for damages for personal injuries. Defendant is a corporation organized under and pursuant to the provisions of Sections 6114 to 6125, inclusive, L. O. L.

The complaint alleges, in substance, that defendant at the time of the alleged injuries owned and operated near Toledo, in Lincoln County, a certain dredger used in deepening the rivers and bays in said vicinity; that on said date, and some time prior thereto, plaintiff was employed by defendant on and about said dredger; that the work involved a risk or danger to him as an employee and was a hazardous occupation; that while he was so employed defendant and its duly authorized agent on April 19, 1913, ordered him to prepare the dredger for operation on April 21, 1913, to fill the boiler by connecting the same by means of a hose with a hydrant on the dock at which the dredger rested, and to start a fire in the engine-room thereof; that at the proper time for performing these duties the dredger was about ten feet below the hydrant from which he was expected to procure the water for filling the boiler; that defendant provided him with a hose and ladder with which to reach the hydrant; that he placed the ladder in a careful and prudent manner and climbed the same for the purpose of examining the threads on the nozzle of the hydrant in order to determine which end of the hose to carry up; that the ladder was defective, in that it was old, worn, and one side thereof was broken and shorter than the other; that the deck of the dredger was wet and slippery; that without any negligence on his part the ladder slipped and fell, throwing him against an iron chock which was

a permanent fixture upon the deck of the dredger, thereby causing the injury of which he complains. There are other allegations tending to bring the action within the provisions of the Employers' Liability Act.

The defendant answered, denying generally the allegations of the complaint, and pleading affirmatively that defendant is a corporation organized and acting exclusively for governmental purposes and the public good, and without profit to itself or anyone else; that at all times since organization it has been employed in improving the channel of the Yaquina River and its tributaries for purposes of navigation, for the public good, and without profit; that any injuries received by plaintiff were so received while defendant was using the dredger for such governmental purposes; that plaintiff was employed at the time as a watchman only, for the purpose of guarding the dredger from injury by fire or otherwise; that defendant had provided a boat for the purpose of enabling its employees to go to and from the dredger to the dock, which constituted a safe and efficient means therefor; that the ladder whereby plaintiff was hurt was placed upon the dredger by the plaintiff and his coemployees without the knowledge or consent of defendant, and was used by plaintiff and his fellow-servants for the sole purpose of accommodating their personal wishes and desires. Then follow allegations of contributory negligence and assumption of risk. A demurrer was interposed to the first affirmative defense, which sets up the contention that defendant was a municipal corporation at the time of the alleged injury employed in widening and deepening the channel of the Yaquina River and its tributaries as a public and governmental duty, and therefore not liable for acts of negligence. The demurrer was sustained, and a reply was filed

consisting of a general denial.  From a judgment for plaintiff, this appeal is taken.  AFFIRMED.

For appellant there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Messrs. Hawkins & McClusky,* with an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Messrs. McFadden & Clarke* and *Mr. J. F. Stewart,* with an oral argument by *Mr. Arthur Clarke.*

MR. JUSTICE BENSON delivered the opinion of the court.

We shall consider the various assignments of error in the same order in which they are discussed in appellant's brief.

1. Assignment numbered 10 involves a construction of the Employers' Liability Act (Laws 1911, p. 16), since defendant contends that climbing a ladder does not involve the use of machinery or any of the enumerated employments mentioned in Section 1 of the law, and that therefore the acts complained of do not fall within the scope of the statute, and that it was entitled to the directed verdict for which it asked.  Attention has been directed so frequently to the final clause of Section 1 of the Employers' Liability Act that it would seem to be unnecessary to reiterate its terms; but for the purpose of this discussion we may say that it reads thus:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only

by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.''

Commenting upon this clause, in the case of *Davis* v. *Carlton Lumber Co.,* 77 Or. 441 (151 Pac. 652), Mr. Justice BEAN says:

''It may now be regarded as settled by the decisions of this court that the general clause of the law quoted above is not restricted to the particular persons and acts mentioned in the first part of the section, but that it amplifies the scope of the statute, by extending its injunction to all persons having charge of or responsible for any work involving a risk or danger to the employees or the public.''

2. The question as to whether or not the work involved a risk or danger is one of fact, to be determined by the jury, rather than a question of law, and we are not at liberty to disturb their finding thereon.

3. We come next to a consideration of the demurrer to defendant's first affirmative answer, pleading exemption from liability by reason of the fact that it is a municipal corporation and was engaged in governmental functions at the time of the alleged injury. Section 358, L. O. L., reads thus:

''An action may be maintained against any of the organized counties of this state upon a contract made by such county in its corporate character, and within the scope of its authority, and not otherwise; and an action may be maintained against any of the other public corporations in this state mentioned in Section 357, in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation.''

It must be conceded that defendant is a municipal corporation and in the class of "the other public corporations" mentioned in the statute just quoted which the law permits to be sued in their corporate character for an injury to the rights of a plaintiff arising from its acts or omissions. As to such corporations the courts have undertaken to make a distinction between such acts as are governmental or, in a sense, judicial, upon the one hand, and such as are ministerial or for the sole benefit of the corporation, upon the other. This distinction, while clear, is difficult of definition in general terms, and must be determined largely upon the facts of the individual case. In this case, however, the decisions of this court have rendered our task less difficult than would have been possible without such clear and apt statements of the law. In the case of *Wagner* v. *Portland,* 40 Or. 389 (60 Pac. 985, 67 Pac. 300), Mr. Justice WOLVERTON says:

"But the case at bar is distinguishable from any of those cases, or any that we have been able to find applying the doctrine referred to therein. Here the city was acting in the discharge of a legal duty to repair the fire-alarm system, and the case is one of common employment for the performance of a special service for and in behalf of the city. The duty was being performed through the instrumentality of private or corporate agencies, and not through the fire department or its officers, or through officers of the city whose duty it was to perform such work; and it might be added that the work of repairing was an act ministerial in its nature. In a similar case (*Mulcairns* v. *City of Janesville,* 67 Wis. 24 (29 N. W. 565), where the city was engaged in the construction of a cistern for the use of the fire department, and an employee was injured through the negligence of other employees, it was held that the city was liable, under the doctrine of *respondeat superior;* so in *McCaughey* v. *Tripp,* 12

R. I. 449, where an employee was injured while the City of Providence was engaged in the construction of a city hall: See, also, *Donahoe* v. *City of Kansas City,* 136 Mo. 657 (38 S. W. 571); *City of Toledo* v. *Cone,* 41 Ohio St. 149. From these latter authorities we are impelled to the conclusion that corporate liability exists in the case at bar, and that the further and separate defense of nonliability was therefore properly stricken out."

Again in the case of *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180), in the original opinion, written by Mr. Justice MOORE, we find the following language:

"A municipal corporation, in devising plans for improving public highways within its borders, acts judicially, and when proceeding in good faith is not liable for errors of judgment; but in constructing the work it acts ministerially, and is bound to see that the plan is executed in a reasonably safe and skillful manner."

And further in the same opinion it is reiterated thus:

"The execution of the plan is a ministerial service, and for any negligent performance thereof liability attaches."

In the opinion upon rehearing of the same case we find Mr. Justice BURNETT emphasizing the same doctrine and supporting it with abundant authority. In the case at bar we find a municipal corporation improving a public highway, the Yaquina River, and engaged in the actual execution of the work. It follows that the demurrer was properly sustained.

4. In this connection there has been some discussion as to whether or not such a public corporation is subject to the provisions of the Employers' Liability Act.

It seems clear to us, however, that if it is amenable to a common-law liability, as is held in the cases cited, it must logically follow that it is liable under a statute so comprehensive in its scope as the one to which reference is made. In the case of *Josupeet* v. *City of Niagara Falls,* 70 Misc. Rep. 638 (127 N. Y. Supp. 527), the court says:

"If it be the individual duty of the municipality to keep the streets in repair and in condition for travel, it must employ men for that purpose, and it must exercise toward them the same care for their safety of life and limb as individual employers are bound to exercise toward their employees. We can see no reason why a municipality should not be held to the same care for the safety of its employees as an individual, nor why all the provisions of the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204) should not apply to cities equally as to private corporations or individuals—employers of labor. The act makes no exceptions in favor of municipalities, and considerations of public policy require none should be made by judicial construction or decision."

The same doctrine is declared in 5 Labatt's Master & Servant, Section 1666.

5. Considering assignments of error numbered 4 and 5, it is sufficient to say that, so far as the requested instructions were pertinent and applicable, they were fully covered by the instructions which the court gave.

6. Assignments numbered 1 and 2 are to the effect that the court erred in permitting the plaintiff to testify over objection, that after he went to work on the dredger he had a conversation with Clarke Copeland, one of the port commissioners, in which the latter said to him: "Dave Ross is your boss. Do whatever he tells you to." If there was any error in admitting this testimony, it was harmless, since, if this action falls

within the scope of the Employers' Liability Act, and we think it does, the corporation would be bound by the acts or directions of the foreman of the work, and there was ample evidence that Ross was such foreman, in charge of the dredger, and directing the "deck hand" as to what he wanted done.

7. The last point for our consideration is defendant's objection to instruction numbered 32, given by the court as follows:

"If you find that the plaintiff is entitled to a verdict it will be then your duty to assess the damages plaintiff has sustained by reason of the injury, and you have the right when assessing the damages to take into consideration the bodily pain and suffering that plaintiff has already undergone and will hereafter suffer on account of the injuries received, also the loss of power to perform labor and duties which he would be called upon to perform in his condition in life and the impairment of his capacity to earn money, and if, after considering all these elements of damages, you conclude that the plaintiff is entitled to recover, it is your duty to determine the sum that, in your judgment, will compensate plaintiff for injuries he received, not exceeding the amount asked for in the complaint."

The instruction does not, so far as we can discover, assume any fact, but leaves it entirely to the jury to determine. It·may be noted that the same instruction has been approved by this court in the case of *Doyle* v. *Southern Pac. Co.,* 56 Or. 495 (108 Pac. 201).

Finding no substantial error in the record, the judgment of the lower court is affirmed.    AFFIRMED.

MR. JUSTICE MCBRIDE and MR. JUSTICE BEAN concur.

MR. CHIEF JUSTICE MOORE dissenting.