Argued February 2, affirmed April 4, 1922.

## VANDERFLUTE *v.* PORTLAND RAILWAY, LIGHT & POWER CO.

(205 Pac. 551.)

**Master and Servant—Place of Work Element of Danger Within Statute.**

1. In determining whether the work a servant was doing when he was injured involved a risk of danger within employers' liability law, the place in which the work was to be done must be considered as a factor.

**Master and Servant—Requirement to Perform Work in Street Held not Cause of Injury Within Statute.**

2. Where the injured employee was required by his employer to make contact between an electric street railway rail and a cord connecting with the fire hydrant, and to protect the cord from passing vehicles, his injury while rolling up the cord to get it out of the way of a motorcycle whose driver had disregarded his signal to stop was not proximately caused by his employer's requirement that he perform his work in the public street so as to bring the injury within employers' liability law.

**Master and Servant—Rule of Proximate Cause of Injury not Changed by Statute.**

3. The employers' liability law, though it has made stringent requirements respecting the duties of employers and has abolished the doctrine of negligence of a fellow-servant, has not changed the rule that the carelessness complained of must be the proximate, and not the secondary, cause of the injury to permit recovery by an injured employee.

From Multnomah: W. N. GATENS, Judge.

Department 2.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Henry Bauer, Mr. W. B. Shively* and *Mr. J. G. Arnold,* with an oral argument by *Mr. Bauer.*

For respondent there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. Frank J. Lonergan,* with an oral argument by *Mr. Cassius R. Peck.*

BURNETT, C. J.—This is an action against the Portland Railway, Light & Power Company and George Wiener, to recover damages for personal injury suffered by the plaintiff, an employee of the defendant railway company. His duty in connection with another employee who was his foreman was to assist in testing the electric voltage of street-car tracks in the City of Portland. The foreman had a voltmeter which he attached to hydrants standing within the curb line near the street pavement, and it was the duty of the plaintiff to take a wire attached both to the voltmeter and to a stick about the size of an ordinary walking-cane, provided with a metal center, and form a contact with the rail in the track. When this contact was effected the amount of voltage showed on the voltmeter through the wire as a conductor and was read and recorded by the foreman. The wire or cord, as it was called in the testimony, was composed of a few small strands of copper wire inclosed in some woven material and was flexible like ordinary fixture wire. In carrying it from place to place it was wound up on two parallel cleats attached transversely across the stick.

According to the testimony, the whole operation of forming a contact and reading the voltage took approximately half a minute. The plaintiff claims that

his instructions were to prevent vehicles from passing over the cord while it was in the street and being used for the test. The testimony discloses that the rail was nineteen feet, eight inches, distant from the hydrant. The plaintiff says in substance that on the occasion mentioned he had gone into the street to make the connection, when he observed the defendant George Wiener approaching on a motorcycle about a block and a half away. The plaintiff signaled for him to stop, but Wiener paid no heed to the warning, and while the plaintiff was attempting to roll up the cord to prevent him from passing over it and had got within about seven feet from the street curb, Wiener carelessly and negligently ran the motorcycle against him, throwing him down and breaking his leg. The charge against the other defendant, the railway company, is couched in this language:

"That the defendant Portland Railway, Light & Power Company employed said plaintiff and instructed him to use said cord as aforesaid and prevent any vehicle or automobile from passing over said cord while it was being used in the street; that said plaintiff was attempting to perform said duties and carry out said ordered instructions at the time of his injury; that the said defendant Portland Railway, Light & Power Company carelessly and negligently placed the said plaintiff in a dangerous and unsafe place to work and carelessly and negligently failed to furnish him a helper or any assistance to perform said duties and carry out said instructions, which was necessary and practical in the performance of said labor; that said defendant Portland Railway, Light & Power Company negligently failed to furnish plaintiff any warning or signal device to be placed upon said cord to warn the public upon its approach, and carelessly and negligently failed to use every device, care and precaution which was practicable to use for the protection and safety of the plaintiff."

It is averred that the defendant company was required by an ordinance of the City of Portland to make regular periodical tests of the voltage of its tracks. The defendant railway company denies all the allegations of the complaint, except that the plaintiff was its employee on the occasion mentioned; that it was operating a street-car system; and that he had received an injury on the date mentioned, but without any fault or negligence on its own part. At the close of the plaintiff's case, on its motion the trial court entered a judgment of nonsuit in favor of the railway company. The case proceeded as to the defendant Wiener, resulting in a verdict and judgment in his favor. The plaintiff appeals only from the judgment of nonsuit.

The employers' liability law has this clause:

"And generally, all owners, contractors, or sub-contractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices." Section 6785, Or. L.

1. In determining whether the work in question does in truth involve a risk or danger, we must give consideration to the place in which the work is to be done, as a factor influencing the decision. To burn a handful of shavings on a barren pedregal would not involve a risk or danger, while it would be hazardous if the same task were performed in a powder-house. In many cases we have held it to be a question of fact whether or not the work involved a risk

103 Or.—26

or danger: *Poullos* v. *Grove,* 84 Or. 106, 113 (164 Pac. 562); *Mackay* v. *Commission of the Port of Toledo,* 77 Or. 611, 616 (152 Pac. 250).

2. But for all that, the plaintiff must prove some necessary connection between the doing of the work as required and happening of the accident. It must be shown that the work was directly and necessarily involved in the infliction of the injury. Wiener's action was not affected one way or another by the presence of the cord in the street, whether seen or unseen. It does not appear that the defendant railway company instructed or had a right to direct the plaintiff to maintain the presence of the cord in the street as against traffic using that thoroughfare. The street is a place of passage to which such work as the plaintiff was doing is subordinate. All he was required to do was to keep vehicles from running over the cord. It does not appear that the company could control the vehicles or had a superior right over their operation. It only demanded of the plaintiff the result that he should keep the cord intact from the passage of vehicles—in other words, keep it out of their way. So far as the evidence discloses, the details of how this was to be accomplished were left to himself. He says that he saw the motorcycle approaching a block and a half distant and that the rider paid no attention to his signals. He had ample time to leave the rail and pass over the nineteen feet, eight inches of distance to the hydrant and drag the cord after him, winding it up, if necessary, in a place of safety. Instead of doing so, he close the more dilatory method of winding up the cord in the street as he progressed. So far as the protection of the plaintiff is concerned, all the signals and devices he mentioned would not have been needed as warning to him, because he saw

the motorcycle in ample time to have avoided its impact. The lack of signal did not affect the case so far as he was concerned. Any number of them would not have compelled him to remove the obstruction from the street and get into a place of safety. The whole matter was in his own hands and under his own control. In short, there is no direct connection between what he was required to do, or the manner in which the defendant demanded he should perform it, and the alleged negligence of Wiener. In *Chambers* v. *Everding & Farrell,* 71 Or. 521 (143 Pac. 616), is quoted with approval this excerpt from *Brown* v. *Oregon-Washington R. & N. Co.,* 63 Or. 403 (128 Pac. 40):

"Proximate cause is such cause as would probably lead to the injury and which has been shown to have led to it. It need not appear from the evidence that the injuries complained of resulted instantly and immediately from the negligence. The law regards the one as the proximate cause of the other, without regard to the lapse of time, where no other cause intervenes or comes between the negligence charged and the injuries received to contribute to it. There must be nothing to break the causal connection between the alleged negligence and the injuries."

Again, quoting from *Washington* v. *Baltimore etc. Ry. Co.,* 17 W. Va. 196, it is said:

"The act or omission, which constitutes negligence, must be such as directly produces as its natural consequence an injury to another. And therefore if a party do an act, which might naturally produce an injury to another as its consequence, but, before any such injury results, a third person does some act or omits to perform some act, and this act or omission of such third person is an immediate cause of an injury, which would not have occurred but for his negligence, such third person is responsible for such injury and not the party guilty of the first negligence;

for the causal connection between the first act of negligence and the injury is broken by the interposition of the act or omission of the third party.''

The opinion in the Chambers-Everding case, by Mr. Justice RAMSEY, is an exhaustive treatise on this subject.

3. While the employers' liability law has made more stringent requirements respecting the duty of employers and has abolished the doctrine of the negligence of fellow-servants in certain circumstances together with the defense of contributory negligence, it has not changed the rule that the carelessness complained of must be the proximate and not the secondary cause of the injury. There is no testimony that the plaintiff was compelled to go into the street in the way of traffic or to expose himself to the danger of collision with vehicles while he performed his work. The very work in which he was engaged was subordinate to the right of vehicles to use the street. He had no right to command traffic to be still to await his convenience, and it is not in evidence that the defendant required or even expected him to do so. He was responsible only for the result of keeping the cord intact, and was not compelled to perform that duty in any particular manner. In that respect the present case is unlike that of *Gunnell* v. *Van Emon Elevator Co.*, 81 Or. 408 (159 Pac. 917), where the duty the plaintiff was required to perform compelled him to put himself in a place of danger, which was the only way in which he could perform the work required. No compulsion of the kind existed here and for all that appears in the case the plaintiff had his own discretion about going into the street or staying on the curb to avoid the danger. As the whole matter was thus in his control and he was responsible only

for the result of keeping the cord intact, he was not in any better situation as respects the defendant company than if he had been in the street on his private business and had been injured in the same manner by the collision with the motorcycle.

The Circuit Court was right in ordering a nonsuit, and its judgment is affirmed.          AFFIRMED.

BEAN, BROWN and McCOURT, JJ., concur.

———

Motion to dismiss denied December 14, 1920, submitted on briefs February 7, modified and affirmed April 4, 1922.